Filed 11/21/14  P. v. Tillis CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C070693 |
| Plaintiff and Respondent, | (Super. Ct. No. SF116919A) |
| v. | |
| DARRELL MONTE TILLIS, | |
| Defendant and Appellant. | |
| THE PEOPLE, | (Super. Ct. No. SF116919B) |
| Plaintiff and Respondent, | |
| v. | |
| MARQUIS DOMINIQUE MOORE,[1] | |
| Defendant and Appellant. | |

---

[1]  The abstract of judgment reflects the spelling of defendant Moore's first name as "Marquise."  In his pro. per. notice of appeal, he sets forth his full name as "Marquis Dominique Moore" and this should be reflected on an amended abstract.

1

Codefendants Darrell Monte Tillis and Marquis Dominique Moore were 18 and 17 years old, respectively, at the time of their criminal escapades in 2010.

A jury convicted defendant Moore—based on three criminal escapades involving eight charges—of three counts of robbery, two counts of assault with a firearm, one count of attempted murder, one count of burglary, and one count of false imprisonment; the jury also found true various gun use enhancements, among other enhancements. (Pen. Code, §§ 211, 245, subd. (a)(2), 664/187, 459, 237, subd. (a) & 12022.53, subds. (b), (c), (d), respectively.)[2]

The jury convicted defendant Tillis of one count of robbery and one count of assault with a firearm, involving one of these three escapades, and found, as an enhancement, that a coprincipal (Moore) was armed with a firearm in the robbery. (§§ 211, 245, subd. (a)(2) &12022, subd. (a)(1), respectively.)

Both defendants raise sentencing issues only. We affirm their judgments of conviction but reverse their judgments of sentence, and remand for a new sentencing hearing for each of them.

As for defendant Moore, who was 17 at the time of his offenses, we reverse his de facto sentence of life without parole (LWOP), based on authority from the United States Supreme Court and from the California Supreme Court; and we remand for the trial court to resentence him in light of this authority.

As for defendant Tillis, the People agree with him, and so do we, that a resentencing remand is required because the trial court mistakenly believed he was presumptively ineligible for probation.

Given the nature of the issues on appeal, detailing the facts is unnecessary.

---

[2] Undesignated statutory references are to the Penal Code.

Suffice it to say, at this point, that on July 18, 2010, Moore and Tillis robbed a man on the street, after Moore hit the man in the head with a gun, demanded money, and directed Tillis to go through the man's pockets. As Moore and Tillis fled, Moore shot the gun twice into the air. (Both defendants were found guilty on count 3 [robbery] and count 4 [assault with a firearm].)

On July 22, 2010, Moore, while masked, robbed an ice cream shop owner at gunpoint, after having earlier conversed, unmasked, with the owner. After the owner made a disparaging comment to Moore and said she recognized him, Moore shot her in the chest and then left while pointing the gun at her head. (Defendant Moore was found guilty of count 8 [robbery], count 9 [attempted murder], and count 10 [assault with a firearm].)

And, on September 5, 2010, Moore, after conversing flirtatiously with a woman, later entered her apartment on a pretext, and robbed her at gunpoint. During this ordeal, Moore grabbed her leg and pulled her toward her bedroom, but she managed to elude his grasp. (Defendant Moore was found guilty of count 13 [robbery], count 14 [burglary], and count 15 [felony false imprisonment].)

We will set forth additional facts in discussing the issues.

## DISCUSSION

### I. Moore's Sentence

The trial court sentenced Moore to an unstayed aggregate term of 83 years to life, comprised as follows: An upper term of nine years for the attempted murder (count 9), plus a consecutive enhancement sentence of 25 years to life for discharging a firearm causing great bodily injury (§ 12022.53, subd. (d)); consecutive sentences of one year each for two of the robbery convictions (counts 3 and 8), plus consecutive gun use enhancements of 20 years and 25 years to life for those two counts, respectively

3

(§ 12022.53, subds. (c), (d), respectively); and, finally, consecutive terms of one year four months for the burglary (count 14) and eight months for the false imprisonment (count 15).

Before we get to Moore's contention concerning his de facto LWOP sentence, we must provide some legal background.

Beginning with *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (*Graham*), followed by *Miller v. Alabama* (2012) 567 U.S. ___ [183 L.Ed.2d 407] (*Miller*), and concluding with *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), the United States and California Supreme Courts have explored, under the constitutional prohibitions on cruel and/or unusual punishment, the limits of government's power to punish minors (juveniles) tried as adults.

In *Graham*, the United States Supreme Court concluded that the "Constitution prohibits the imposition of [an LWOP] sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." (*Graham*, *supra*, 560 U.S. at p. 82 [176 L.Ed.2d at p. 850].)

In *Miller*, the United States Supreme Court, after noting that LWOP is the harshest penalty constitutionally available for juveniles, concluded that a sentencing court must "follow a certain process" before imposing this penalty. (*Miller*, *supra*, 567 U.S. at p. ___ [183 L.Ed.2d at p. 426].) The sentencing court must consider the offender's youth and the hallmark features of youth that are indicative of lesser culpability and greater capacity for change compared to adults (among them, immaturity, impetuosity, and failure to appreciate risks and consequences); and consider, in an individualized way, the nature of the offender and the offense (for example, as relevant, the offender's

4

background and upbringing, mental and emotional development, and possibility of rehabilitation). (*Id.* at pp. ___-___ [183 L.Ed.2d at pp. 421-423].)

And, in *Caballero*, the California Supreme Court concluded that *Graham* and *Miller* applied to a de facto (functionally equivalent) LWOP sentence of 110 years to life imposed on a 16-year-old defendant convicted of three counts of attempted murder. (*Caballero*, *supra*, 55 Cal.4th at pp. 265, 268-269.) The *Caballero* court urged "the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Caballero*, at p. 269, fn. 5.)

The Legislature took the state Supreme Court's advice and enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) sections 1 and 4, which added section 3051 to the Penal Code. As relevant here, section 3051 provides an opportunity to juveniles, who are sentenced to an LWOP term for nonhomicide offense(s), to obtain release on a showing of rehabilitation and maturity after serving a prescribed term of confinement. Under section 3051, a nonhomicide juvenile offender whose sentence is 25 years to life or greater is "eligible for release on parole by the [Board of Parole Hearings, no later than] during his or her 25th year of incarceration at a youth offender parole hearing . . . ." (§ 3051, subds. (b)(3), (e).)

Moore contends his sentence of 83 years to life amounts to an unconstitutionally cruel and/or unusual punishment, because it is a de facto LWOP sentence that was imposed without considering his individual characteristics as a juvenile offender and without providing him a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Moore claims his case must be remanded for a new sentencing hearing along these lines.

5

The People counter that Moore's sentence is not cruel and/or unusual because section 3051 makes him eligible for parole during his 25th year of incarceration. Consequently, a remand for resentencing is unnecessary.

The dispositive question, then, reduces to—Does the legislative remedy provided in section 3051 correct the constitutional violation in sentencing that the People concede is present here? (The trial court did not have the benefit of *Miller* and *Caballero*, which were decided after the court sentenced Moore in April 2012.) We answer this question, "No."

As our state Supreme Court concluded in *Caballero,* "Although proper authorities may later determine that youths should remain incarcerated for their natural lives, the state may not deprive them *at sentencing* of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future. Under *Graham's* nonhomicide ruling, *the sentencing court must consider all* [relevant] *mitigating circumstances attendant in the juvenile's crime and life . . .* so that it can impose a time when the juvenile offender will be able to seek parole from the parole board." (*Caballero, supra,* 55 Cal.4th at pp. 268-269, italics added.)

Section 3051 does not substitute for the *sentencing court's* consideration of all individual characteristics of the juvenile offender. Regardless of whether section 3051 may eventually convert a de facto LWOP sentence to one with the possibility of parole, the United States and California Supreme Courts, in *Graham, Miller* and *Caballero*, have constitutionally required *the sentencing court* to consider the factors of youth and maturity *when selecting the initial punishment*. The statutory promise to have a future parole board review an improperly considered sentence does not cure the constitutional error. The possibility that Moore will have a board of parole undertake an evaluation 25 years after his sentencing (the year 2037) is not a substitute for the trial court's evaluation at sentencing. Without a proper evaluation by the trial court, juvenile offenders will be

6

deprived of their constitutionally guaranteed evaluation at the time of their sentencing and again when attempting to meet their burden during the much later youth offender parole hearings.**3**

A resentencing remand for Moore is further supported by our state Supreme Court's recent decision in *People v. Gutierrez* (2014) 58 Cal.4th 1354. There the high court constitutionally invalidated, in light of *Graham* and *Miller,* a statutorily construed presumption in favor of LWOP sentences for 16- and 17-year-old special circumstance murderers, notwithstanding a later statutory enactment that provided a meaningful opportunity for such offenders to obtain release. (*Gutierrez*, at pp. 1386-1387.) In short, the *Gutierrez* court recognized that a statutory promise of future correction of a presently unconstitutional sentence does not obviate the need to remand for resentencing that comports with the constitutional ban on cruel and/or unusual punishment.

We conclude that Moore's judgment of sentence must be reversed, and we remand his case to the trial court for a new sentencing hearing consistent with the authority noted above.**4**

---

**3** The question whether section 3051 resolves any constitutional infirmity with juvenile de facto LWOP sentences by offering the possibility of parole after 25 years, is a question pending before the state Supreme Court.

**4** Moore raises two other sentencing issues that are largely superfluous in light of our sentencing remand. Nevertheless, we note, first, the trial court did not err prejudicially in sentencing Moore to the upper term of nine years for the attempted murder (count 9). Assuming for the sake of argument the trial court erred in using the same fact to impose both the upper term and a sentence enhancement (i.e., improper dual use of facts—here, the facts of gun use and infliction of great bodily injury), the trial court also cited to several other aggravating factors supported in the record. (See *People v. Osband* (1996) 13 Cal.4th 622, 728-729 [a single aggravating factor is sufficient to impose an upper term].) And, second, the trial court properly declined to stay, under section 654, Moore's false imprisonment sentence of eight months (count 15) because there is substantial evidence he committed this offense with a different intent and objective than the burglary-robbery accompanying it (counts 14, 13, respectively). (*People v. Coleman*

## II. Tillis's Sentence

Tillis contends, the People agree, and we echo, that Tillis's aggregate sentence of four years must be reversed, and his case remanded for a new sentencing hearing. Tillis's four-year aggregate sentence was comprised as follows: count 3, robbery (three years), with a one-year gun enhancement (§ 12022, subd. (a)(1), coprincipal armed); and count 4, assault with a firearm (§ 654 stay of sentence).

In sentencing Tillis, the trial court mistakenly believed that Tillis was presumptively ineligible for probation because Moore was armed with a firearm during these two offenses. This presumption of probation ineligibility applies only if the defendant being sentenced was *personally* armed with (or personally used) a firearm. (§ 1203, subd. (e)(2); *People v. Alvarez* (2002) 95 Cal.App.4th 403, 406-409.)

## DISPOSITION

The judgments of conviction are affirmed. The judgment of sentence for defendant Moore is reversed, and his case is remanded for a new sentencing hearing as explained herein. The judgment of sentence for defendant Tillis is reversed, and his case is remanded for a new sentencing hearing as explained herein.

           BUTZ        , J.

I concur:

      HULL       , J.

---

(1989) 48 Cal.3d 112, 162.) Given the prelude of Moore's flirtatious, sexual conversation with the female victim, and later Moore's act of dragging the victim toward her bedroom, it reasonably can be inferred (as the victim inferred, who managed to free herself from Moore's clutches) that the false imprisonment was committed for purposes beyond the burglary-robbery, i.e., rape.

Finally, our resolution of this appeal renders moot Moore's claim that his counsel acted ineffectively to the extent Moore's sentencing issues have not been preserved for appellate review.

8

Nicholson, Acting P. J., Concurring and Dissenting.

As to defendant Tillis, I concur in the result of the majority opinion.

As to defendant Moore, however, I respectfully dissent.

The majority reverses for resentencing based on language in *Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] (*Graham*), *Miller v. Alabama* (2012) 567 U.S. ___ [183 L.Ed.2d 407] (*Miller*), and *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*). I do not believe that reversal is required even if, applying the after-acquired wisdom of *Graham, Miller,* and *Caballero*, the trial court erred by sentencing defendant Moore to a term that is the functional equivalent of a sentence of life without parole. No reversal is required because, since the enactment of Senate Bill No. 260 (Pen. Code, § 3051), his sentence is no longer the functional equivalent of a sentence of life without parole. The later-legislated limit of 25 years to life for a juvenile nonhomicide offender eliminates the concerns of the high courts in *Graham, Miller,* and *Caballero* and renders our expenditure of further time and resources on the issue both unnecessary and imprudent.

To explain, I must put the issue in context.

The Eighth Amendment categorically bans imposition of a sentence of life without parole on a juvenile nonhomicide offender. (*Graham, supra,* 560 U.S. at p. 75.) The Eighth Amendment also categorically bans imposition of the functional equivalent of a sentence of life without parole on a juvenile nonhomicide offender. (*Caballero, supra,* 55 Cal.4th at p. 268.) That summarizes *Graham* and *Caballero*.

*Miller* dealt with whether the Eighth Amendment allowed *mandatory* imposition of a term of life without parole on a juvenile *murderer*. (*Miller, supra,* 567 U.S. at pp. ___ [183 L.Ed.2d at pp. 414-415].) The court held that a life-without-parole term cannot be mandatory, but such a term is permissible if the term is discretionary and the court takes into account certain relevant circumstances. *Miller* summarized those circumstances as follows (which I call the *Miller* factors):

1

"Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him -- and from which he cannot usually extricate himself -- no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. [Citations.] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it." (*Miller, supra,* 567 U.S. at p. ___ [183 L.Ed.2d at p. 423].)

*Miller* did not hold that every court sentencing any juvenile must consider the *Miller* factors. It pertained only to the discretionary determination of whether a juvenile murderer should be sentenced to a term of life without parole. Therefore, quoting *Miller* in a case of a juvenile offender who did not commit homicide misapplies that *Miller* requirement. In fact, no amount of considering *Miller* factors with respect to a juvenile who did not commit homicide can justify imposing a sentence of life without parole because the high court, in *Graham*, categorically banned such sentences for juveniles who committed crimes short of homicide.

*Caballero* applied *Graham*, according to the first and last paragraphs in the *Caballero* opinion. (*Caballero, supra,* 55 Cal.4th at pp. 266, 268-269.) Since the Eighth Amendment categorically bans a term of life without parole for a juvenile who did not commit homicide, reasoned the California high court, it also categorically bans the functional equivalent of a term of life without parole. (*Id.* at p. 268.)

2

While it is true that *Caballero* includes statements about what a *sentencing court* must consider when imposing a sentence on a juvenile nonhomicide offender, those statements are dicta. (*Caballero, supra,* 55 Cal.4th at pp. 266, 268-269.) The holding of *Caballero*, the sole ratio decidendi, is that the Eighth Amendment categorically bans sentences of life without parole for juvenile nonhomicide offenders. Again, no amount of considering the *Miller* factors can justify imposing a term of life without parole or its functional equivalent on a juvenile nonhomicide offender.

On the other hand, there is no authority that the Eighth Amendment bans a legislature from prescribing a mandatory term of 25 years to life for a juvenile convicted of heinous crimes, or series of crimes, short of homicide. (*People v. Dillon* (1983) 34 Cal.3d 441 is an outlier confined to its own facts.) Such a sentence is not a term of life without parole or the functional equivalent of life without parole and, therefore, *Graham*, *Miller*, and *Caballero* are not implicated. So why cannot the Legislature impose such a term retrospectively and eliminate Eighth Amendment concerns? I believe it can and did.

With these thoughts in mind, I believe the majority misreads *Graham, Miller,* and *Caballero*.

The majority concludes that Senate Bill No. 260 does not eliminate the necessity of reversing and remanding for resentencing a functional equivalent of a life-without-parole sentence for a youthful nonhomicide offense. It determines that the trial court must resentence the youthful defendant. In making this determination, the majority uses statements in *Miller* and *Caballero* about how the sentencing court must consider factors pertaining to the defendant's age. This approach, however, ignores the actual holdings of *Miller* and *Caballero*. *Miller* related to discretionary sentencing of a juvenile murderer to a term of life without parole, and, as I have already said, the language now cited from *Caballero* is dicta. Also, the statements in *Caballero* concerning what the sentencing court must consider pertained to the law as it existed at the time *Caballero* was decided,

3

with the possibility that a youthful nonhomicide offender might be subject to a sentence that is the functional equivalent of a term of life without parole.

But now the law has changed. With the passage of Senate Bill No. 260, as recounted in the majority opinion, no defendant who committed a nonhomicide offense as a juvenile is currently subject to the functional equivalent of a life-without-parole sentence because the possibility for parole exists after 25 years of incarceration, at the latest. Since there can be no dispute that a sentence of 25 years to life is not the functional equivalent of a life-without-parole sentence for a juvenile, there is no Eighth Amendment problem, at least as it relates to *Graham, Miller,* and *Caballero*.

The majority relies in part on *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*), which is a case involving life without parole for special circumstance *murder*, a homicide offense. In *Gutierrez*, the California Supreme Court found that California's special circumstance law, Penal Code section 190.5, subdivision (b), does not violate the Eighth Amendment because it does not impose a mandatory sentence of life without parole, neither does it create a presumption of life without parole. However, because the sentencing court did not know that there was no presumption for a life-without-parole sentence, as opposed to a term of 25 years to life, the Supreme Court reversed and remanded for resentencing. (*Id*. at pp. 1360-1361.)

The different, though also later-legislated, scheme considered in *Gutierrez* provides a youthful *homicide* offender the opportunity to petition for recall of the sentence after 15 years of incarceration and assigns to the youthful offender the burden of showing rehabilitation. (Pen. Code, § 1170, subd. (d)(2); *Gutierrez, supra,* 58 Cal.4th at p. 1384.) The court held that this sentence recall scheme did not alleviate the need to remand for resentencing. It said: "*Graham* spoke of providing juvenile offenders with a 'meaningful opportunity to obtain release' as a constitutionally required alternative to – not as an after-the-fact corrective for – '*making the judgment at the outset* that those offenders never will be fit to reenter society.' (*Graham*, at p. 75, italics added.)

4

Likewise, *Miller's* "cf." citation to the 'meaningful opportunity' language in *Graham* occurred in the context of prohibiting 'imposition of that harshest prison sentence' on juveniles under a mandatory scheme. (*Miller*, at p. ___ [132 S. Ct. at p. 2469].) Neither *Miller* nor *Graham* indicated that an opportunity to recall a sentence of life without parole 15 to 24 years into the future would somehow make more reliable or justifiable the imposition of that sentence and its underlying judgment of the offender's incorrigibility 'at the outset.' (*Graham*, at p. 75.)" (*Gutierrez, supra,* 58 Cal.4th at p. 1386.)

This text from *Gutierrez* superficially seems to support remand in a case of a youthful *nonhomicide* offender subject to the functional equivalent of a life-without-parole sentence, despite the enactment of Senate Bill No. 260. But a close look at the two recent statutes in question exposes the folly of equating them.

Penal Code section 1170, subdivision (d)(2), at issue in *Gutierrez*, gives a youthful homicide offender the opportunity to petition the sentencing court for recall of the sentence after 15 years. In other words, the statute does not have the effect of modifying the sentence. Instead, it provides an opportunity, later, to petition to be resentenced, which opportunity can be lost by failing to file a petition to recall the sentence.

Senate Bill No. 260, on the other hand, makes a youthful offender *eligible for release on parole* after the prescribed number of years, at most 25. (Pen. Code, § 3051, subd. (b).) The youthful offender need not file any petition because the youthful offender parole board is required to hold the parole hearing (Pen. Code, § 3051, subd. (d)), which makes the situation the functional equivalent of having been sentenced to 25 years to life originally (since we are talking about functional equivalents).

The majority does not acknowledge the considerable difference between the two schemes. Under the Penal Code section 1170, subdivision (d)(2) scheme, the life-without-parole sentence is unaltered if the youthful offender fails to file the petition or fails to establish rehabilitation. Under the Senate Bill No. 260 scheme, however, the

youthful offender's sentence is effectively changed to a sentence of 25 (or less) years to life because the parole eligibility and hearing are automatic.

Therefore, neither *Gutierrez* nor reason support a remand for resentencing after enactment of Senate Bill No. 260 in the case of a youthful nonhomicide offender sentenced to the functional equivalent of life without parole. Defendant here is not currently subject to a sentence that is the functional equivalent of life without parole; therefore, his punishment is neither cruel nor unusual – that is, it does not violate the Eighth Amendment.

One final consideration bears mention. The majority remands for resentencing, effectively ordering the trial court to impose a sentence that does not violate the Eighth Amendment (which apparently means a term that is not the functional equivalent of a life-without-parole sentence). The majority, however, does not and cannot give the trial court authority to impose a sentence that is not authorized by statute. That is another reason why relying on Senate Bill No. 260 as a remedy is sound, while remand for resentencing is not.

I would affirm as to defendant Moore.

NICHOLSON          , Acting P. J.

6